329 So.2d 742 (1976)
STATE of Louisiana
v.
Alfred JUDSON.
No. 57174.
Supreme Court of Louisiana.
March 29, 1976.
Jack T. Marionneaux, Asst. Public Defender, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Samuel C. Cashio, Dist. Atty., Houston C. Gascon, III, Asst. Dist. Atty., for plaintiff-appellee.
*743 DIXON, Justice.
The defendant, Alfred Judson, was originally charged by bill of information with the crime of simple robbery. Subsequently the district attorney dismissed the robbery charge and instituted the charge of theft by a separate bill of information, which was based on the same facts that had given rise to the robbery charge. The defendant was convicted of theft in a jury trial on October 20, 1975, and subsequently sentenced to ten years imprisonment. On appeal he relies on one assignment of error.
The defendant filed a pre-trial motion to suppress a line-up identification made by one of the eyewitnesses to the crime. To the trial judge's ruling denying the motion to suppress, the defendant assigns this error.
On the morning of October 4, 1974 two rings were stolen from Ocmand's Quality Jewelry Store. Mr. Freddie Pitre and Miss Angela Bower, employees of the store who were present at the time of the theft of the rings, were taken to the Iberville Parish sheriff's office to view the local "mug book" to see if either could identify the perpetrators of the theft. No identification was made at this time.
Subsequently Mr. Pitre and Miss Bower were shown some eight to twelve photographs obtained from the State Police. From this group of pictures, Mr. Pitre positively identified the defendant as one of the perpetrators of the crime. Based on this identification the defendant was arrested.
On or about February 6, 1975, or some four months after the crime, a line-up was conducted at the Iberville Parish sheriff's office in Plaquemine. Mr. Pitre, who had previously made the photographic identification of the defendant, once again positively identified him as one of the participants in the crime.
On April 4, 1975 a preliminary hearing and a hearing on a motion to suppress was held. At this hearing it was brought out that Mr. Pitre had once been shown a family album which contained pictures of the defendant along with his relatives and friends. Mr. Pitre at this hearing first testified that he was not sure when the album had been dispayed to him. However, when pressed, he finally stated that he "guessed" it had been shown to him before the line-up had taken place.
On October 17, 1975 another preliminary hearing was held in this case. At this hearing Mr. Pitre testified that he was sure that the album had not been shown to him until after the line-up had taken place. He testified that he must have been confused at the first hearing when he stated he had been shown the album before the line-up took place.
At the trial of the case Mr. Pitre again positively identified the defendant as one of those participating in the theft of the rings from the jewelry store.
It is the defendant's contention that the family album was seen by Mr. Pitre before the line-up, and that his seeing the family album immediately prior to the line-up tainted the line-up identification and subsequent in-court identification. For the reasons stated below, we cannot agree.
The burden of proof rests on the defendant to show that the line-up identification was impermissibly tainted. C.Cr.P. 703. In the instant case, no such showing has been made. The defendant was represented by counsel at the line-up. His counsel was allowed to choose the other participants and assign their respective positions. The only basis for the allegation that the line-up identification was tainted is the possibility that Mr. Pitre viewed pictures of the defendant in a family album before the line-up had taken place. However, this fact was not proven.
Admittedly, at the first hearing, Mr. Pitre, in somewhat confused testimony, "guessed" that he had been shown the album *744 before viewing the line-up. However, at the second hearing he positively stated that he had not been shown the family pictures until after the line-up had been conducted. This testimony is corroborated by that of Officer Stassi who testified that he did not, nor to his knowledge did anyone else, display the album until after the line-up had been conducted. Under such circumstances, we cannot say that the line-up identification was tainted. See State v. Johnson, 306 So.2d 724 (La.1975); State v. Nelson, 306 So.2d 745 (La.1975).
Even if we assume arguendo that the line-up identification was tainted by Pitre's viewing the family album before the line-up had taken place, it is settled that the witness' subsequent in-court identification does not violate the defendant's due process rights where it has a source independent of the out-of-court identification. State v. Bland, 310 So.2d 622 (La.1975). In State v. Newman, 283 So.2d 756 (La.1973), we stated that a determination of whether the witness' in-court identification was based on an independent source involves three factors: (1) the prior acquaintance of the witness with the accused; (2) the length of time the witness observed the perpetrator before, during and after the offense; and (3) the circumstances in which the observation was made, including illumination at the scene, the physical capacities of the witness and the emotional state of the witness at the time of the observation.
In the instant case, the perpetrators had been in the store the day before the theft, in full view of Mr. Pitre. They made a purchase that day. They returned the next morning, and were the only two customers in the store at the time of the theft. Having seen them make a purchase the day before, there was no reason for Mr. Pitre to be anything but relaxed as he observed them the morning of the crime. The store itself is well lighted. It is clear that, given these facts, the in-court identification had a course independent of any out-of-court identification, tainted or otherwise.
Accordingly, the conviction and sentence are affirmed.