345 So.2d 874 (1977)
STATE of Louisiana
v.
Glenn S. PASSMAN.
No. 58594.
Supreme Court of Louisiana.
April 11, 1977.
Rehearing Denied May 13, 1977.
*879 James J. Gleason, III, Director, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Patrick J. Berrigan, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
On the night of May 26, 1974, two men, claiming they had car trouble and needed to call for assistance, gained entry into the St. Tammany Parish home of Pat O'Brien, a well known night club owner. Once inside one of the men produced a gun and demanded money. A struggle followed in which Mr. O'Brien was seriously wounded and beaten. The intruders, leaving the wounded victim in the kitchen, then began to search the house for a wall safe. In one of the rooms they discovered Mrs. O'Brien and Cara, the O'Brien's sixteen year old daughter. After searching several rooms in the house the men returned to the kitchen, accompanied by Mrs. O'Brien and Cara, and were fired upon by Mr. O'Brien, who had been able to reach a .22 caliber rifle. The two men fled, taking from the premises two hand guns belonging to Mr. O'Brien.
Subsequently the two men were identified as Walter Burnette and Glenn Scott Passman, and both were charged with armed robbery. La.R.S. 14:64. Separate trials were ordered. Glenn Scott Passman, tried by jury in March of 1976, was found guilty of armed robbery, and thereafter sentenced to serve ninety-nine years at hard labor, without benefit of parole, probation or suspension of sentence.
In this appeal, defendant Glenn Passman relies on twenty-nine of thirty-one assigned errors. Assignments numbers one and four, having been neither brief nor argued, are regarded as abandoned. State v. Wientjes, 341 So.2d 390, 391 (La.1976).

ASSIGNMENT OF ERROR NO. 2
During voir dire examination defense counsel asked prospective juror Walter Foulks whether he would be able to consider defendant's guilt or innocence, without being influenced by whether the defendant took the stand in his own behalf. When Mr. Foulks replied that he might be influenced by this fact, "according to how bad the case went against him or for him," counsel inquired whether he felt he could follow the judge's instruction not to consider this fact in weighing the defendant's guilt. To this inquiry Mr. Foulks responded: "I may have trouble and I may not." Counsel moved to excuse Mr. Foulks for cause, on the authority of La.C.Cr.P. art. 797(4).[1]
Counsel's challenge for cause was ultimately rejected by the court, and an objection noted. It is this ruling which defendant assigns as error. Counsel thereafter exhausted his peremptory challenges prior to completion of the jury panel. La.C.Cr.P. art. 800.
Before ruling on counsel's motion to challenge Mr. Foulks for cause, the trial judge questioned him as follows:
"THE COURT:
"If the Court instructs you that you are not to take into consideration the fact that he didn't take the stand, that is the law of this State, could you accept that as the law and follow it in the jury room?
"MR. FOULKS:
"Yes, sir.
"THE COURT:
"Do you feel you could do that, even though
"MR. FOULKS:
"I would accept it as the law. Yes, sir.
"THE COURT:

*880 "And put it out of your mind, the fact of your belief that the man should tell his side?
"MR. FOULKS:
"Yes.
"THE COURT:
"You could do that?
"MR. FOULKS:
"I believe I can do it. Yes, sir.
"THE COURT:
"Don't tell me you believe you can. Do you think you can?
"MR. FOULKS:
"I believeyeah. I believe so."
We have repeatedly held that the trial judge is vested with broad discretion in ruling on challenges for cause, and only where it appears, upon review of the voir dire examination as a whole, that the judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused, will this Court reverse the ruling of the trial judge. State v. Weathers, 320 So.2d 895 (La.1975); State v. O'Conner, 320 So.2d 188 (La.1975); State v. Frazier, 283 So.2d 261 (La.1973); State v. Willis, 262 La. 636, 264 So.2d 590 (1972).
A trial judge's refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Governor, 331 So.2d 443 (La.1976); State v. Nix, 327 So.2d 301 (La.1976); State v. Johnson, 324 So.2d 349 (La.1976).
The instant case is distinguishable from that of State v. Nolan, 341 So.2d 885 (La. 1977), therein we found an abuse of discretion in the trial court's refusal to excuse a prospective juror for cause, where the juror's voir dire testimony revealed not only a predisposition in favor of the State and its witnesses and against the defendant and his witnesses which was not dispelled by retractions elicited by the court and the district attorney after "considerable coaching," but also, that the juror exhibited an "[in]ability to grasp the questions propounded [to her]," indicating a lack of competency to understand and apply the law.
When taken as a whole, Mr. Foulks' testimony on voir dire does not support defendant's contention that the judge's ruling constituted an abuse of discretion and reversible error.
This assignment of error is therefore without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant, in this assignment of error, complains that the trial judge improperly denied his request for a change of venue. Defendant, in his written motion, alleged that extensive media coverage of the crime made it impossible for him to secure an unbiased jury, and consequently made a fair trial impossible.
In State v. Bell, 315 So.2d 307 (La.1975), this Court set forth the following factors to be considered in determining whether to change venue:
"* * * (1) [T]he nature of pretrial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the release of the publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire." 315 So.2d at 311.
Other factors we regard as relevant to this inquiry include:
"* * * The degree to which the publicity has circulated in areas to which venue could be changed, the care exercised and the ease encountered in the selection of the jury, the familiarity with the publicity complained of and its resultant effect, if any, upon the prospective *881 jurors or the trial jurors, and the peremptory challenges and challenges for cause exercised by the defendant in the selection of a jury. See, generally, Annotation 33 A.L.R.3d 17 (1970)." State v. Berry, 329 So.2d 728, 730 (La.1976).
This Court, applying these principles, rejected precisely the same argument raised by Passman's co-participant, Walter Burnette, in the course of his appeal, State v. Burnette, 337 So.2d 1096, 1098-99 (La.1976), and it is not insignificant that Burnette's trial took place several months before Passman'scloser in point of time to the date of the offense, and presumably while the community's initial sense of outrage over the crime was more intense than it was at the time of Passman's trial.
Our review of the evidence adduced at the March 23, 1976 hearing on the motion for change of venue, coupled with our examination of the jurors' responses to questioning on voir dire, leads us to the conclusion that defendant was not entitled to a change of venue.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 5, 10 and 11
Defendant complains in these assignments of error of what he characterizes as "prosecutorial misconduct." In the defendant's view, the prosecutor throughout the trial sought to belittle, ridicule, degrade and discredit the defendant and his witnesses, making them out to be "hostile, lying, vicious people, through manners, words, tones of voice or through the employment of inflammatory phraseology" in order to create prejudice in the mind of the jury, and thereby to defeat defendant's right to a fair trial.
In assignment of error number five defendant argues that the trial court erred in overruling his objection to the following question, asked by the prosecutor of Pat O'Brien the robbery victim, who had moments before made an in-court identification of the defendant as one of his assailants:
"Is there any doubt in your mind but that this man sitting right there with that maroon coat [Passman], the man glaring at me, was the man in your house that night?" (Emphasis supplied.)
Counsel objected to the question as "argumentative," reasoning that the district attorney's "baiting techniques" were an improper method of examination; his objection was overruled.
In assignments numbers ten and eleven defendant argues that the trial court erred in allowing the State's attorney to badger and harass defendant's witnesses. In each case it appears clear that the State's attorney was attempting to lay a foundation for subsequent impeachment of the witnesses' testimony. Defendant does not contend that the questioning itself was improper rather his argument is that the technique of questioning was improper. The State's attorney cross-examined Mr. Hampton Burris, an alibi witness, who had testified on direct examination that on May 26, 1974 Passman had been with him and others in Mississippi until 6:00 or 6:30 p.m., as follows:
"[THE PROSECUTOR]:
"Q. When you came to the jail, did you discuss with Glenn Passman his trial that was coming up?
"A. No, sir. Didn't even know about a trial. I mean, I just came in to speak to him.
"Q. You did not discuss the trial or the trip to Mississippi when you visited Glenn Passman in jail?
"Now, I am putting you on your guard, Mr. Burris.
Defense counsel objected on the ground that the questioning was argumentative, and designed to badges the witness; his objection was overruled by the trial judge, who commented, "it is cross examination."
Finally, as the State's attorney cross-examined Rhonda Passman, wife of the accused, whose testimony was that he had been with her at the time the robbery took place, the following transpired:

*882 "[THE PROSECUTOR]:
"Q. Did you ever tell them that your mother and Mr. and Mrs. Burris and you were with Glenn Passman on the 24th, 25th and 26th before today?
"A. Yes, I did.
"Q. You told the police that he was with your mother and you and your aunt before today?
"Now, remember what I am asking you. You told the St. Tammany Parish Sheriff's Office and Steve Raacke that Glenn Passman was in Mississippi with you and your mother and Mr. and Mrs. Burris before today?
"[DEFENSE COUNSEL]:
"Your Honor, I am going to object to the tone of the District Attorney in his cross examination. It is a
"[THE PROSECUTOR]:
"May it please the Court, my voice is my business and not his.
"THE COURT:
"Wait a minute, Mr. [Prosecutor]:
"[DEFENSE COUNSEL]:
"It is a harassing, badgering technique of cross examination, and it is unethetical [sic] type of cross examination.
"[THE PROSECUTOR]:
"May it please the Court, he cross examines the way he wants and I cross examine the way I want.
"THE COURT:
"All right, Mr. [Prosecutor]. Sit down. I'm going to overrule your objection. The lady is on cross examination.
"[DEFENSE COUNSEL]:
"I would like to object to the Court's ruling and note it for assignment of error.
"[THE PROSECUTOR]:
"My tone of voice doesn't reflect on that machine."
In brief defense counsel argues that in each of these situations the trial court, rather than overruling the objection should have rebuked the State's attorney and admonished the jury to disregard the prejudicial innuendo of the questioning. We note that such an admonition was never requested by counsel, though, in view of the trial judge's rulings on each of the objections we are inclined to believe the request would have been futile.
It is not feasible for this Court to review the tone of voice used, and it is impossible to detect the accompanying gestures or other subtleties which animate verbal speech from a written transcript.
Necessarily, the trial judge is given wide discretion in controlling the conduct and orderly process of trial. State v. Williams, 341 So.2d 370 (La.1976); cf. La.C. Cr.P. art. 17. His rulings in this respect will not be reversed absent an abuse of discretion. State v. Richardson, 337 So.2d 210 (La.1976); State v. Terregano, 336 So.2d 859 (La.1976).
Admittedly, our present ability to review this kind of error is limited. However, after careful review, not only of the particular conduct challenged by the defendant in these assignments, but of the entire transcript, we do not believe that defendant has demonstrated an abuse of discretion in the trial judge's rulings.
Nevertheless, for purposes of assisting the lower courts in ruling on similar objections in the future, and of guiding prosecutors as officers of the court in regulating their own conduct, we commend to them with our express approval the ABA Standards Relating to the Prosecution Function (1971), particularly sections 5.2 (courtroom decorum)[2] and 5.7(a) (examination *883 of witnesses).[3]
For the foregoing reasons, we find no reversible merit in assignments of error numbers five, ten and eleven.

ASSIGNMENT OF ERROR NO. 6
Defendant, in this assignment of error, complains that the trial judge erred in admitting, over his objection, testimony concerning the acuteness of Mr. O'Brien's vision in the months preceding and following the robbery. During the course of direct examination, the State's attorney asked Mr. O'Brien whether he liked to hunt; whether he could shoot without problems; and whether he had killed any game on recent hunting trips. Defendant objected, but, before he could state the reason for his objection, was interrupted by the State's attorney, who commented:
"The man is 80 years old. I think I have a perfect right to prove his eye sight."
The trial judge agreed.
Defendant's position is that the evidence was irrelevant, as the witness' ability to see had not been challenged by the defense.
The relevancy of proffered evidence depends on whether it tends to prove or disprove a material fact at issue. La. R.S. 15:441 and 435; State v. Sneed, 328 So.2d 126 (La.1976). The relevancy of evidence is to be tested by the purpose for which it is offered. La.R.S. 15:442.
The obvious purpose of the testimony objected to, was to show that Mr. O'Brien's eye sight was good, despite his advanced age, and that his testimony should as a consequence be believed. It is therefore clear that the testimony was offered to support the credibility of the State's witness, and was improperly admitted if Mr. O'Brien's ability to see, and hence his credibility in that respect was not, at that time, a material issue in the case.
Louisiana law provides that testimony to establish the credibility of a witness is not normally admissible until that credibility has been attacked. La.R.S. 15:484; State v. Williams, 331 So.2d 467 n. 2 (La.1976); State v. Watson, 159 La. 779, 106 So. 302 (1925). Accord, McCormick on Evidence, § 49 at 102-07 (Cleary ed. 1972). Since, at the time that Mr. O'Brien was interrogated about his vision, his ability to see clearly had not been questioned, his credibility in this respect was not properly provable when the objection was noted. The trial judge's ruling therefore was erroneous.
Nevertheless, defendant has not alleged or shown how he was prejudiced by the judge's ruling. Furthermore, the error did not constitute a substantial violation of a constitutional or statutory right, or result in a probable miscarriage of justice. La.C. Cr.P. art. 921.
This assignment of error does not demonstrate grounds for reversal.

ASSIGNMENT OF ERROR NO. 7
Defendant argues in this assignment, that the trial court committed reversible error in failing to order the testimony of Mrs. Cara O'Brien stricken, or alternatively in failing to grant a mistrial, after she admitted on cross-examination that she had violated the court's sequestration order.
Mrs. O'Brien concluded her testimony just prior to noon recess on the second day of trial. During the course of cross-examination she admitted discussing with her *884 daughter some of the questions which the latter had been asked when testifying the previous day. Mrs. O'Brien denied that the conversation was detailed or extensive. When court reconvened after the noon recess, defense counsel moved to strike Mrs. O'Brien's testimony on the ground that she had violated the sequestration order. The motion was overruled.
Pretermitting the question of the timeliness of defendant's objection, see, La.C. Cr.P. art. 841, Louisiana law does not recognize a motion to strike. The judge's ruling was therefore correct. Further, no mistrial was requested by defense counsel, and no grounds existed for the trial judge to order a mistrial sua sponte. See, La.C.Cr.P. art. 775.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant assigns as error the trial judge's admission, over defense objection, of testimony by Albert Olsen, a police officer and fingerprint technician, that he had been unable to lift any identifiable prints from the O'Brien residence. Officer Olsen freely admitted that he was not qualified to make identifications based on fingerprint comparison. This admission, argues the defendant rendered incompetent Olsen's testimony that no prints with sufficient points of identification to permit matching were found at the crime scene.
Defendant's argument is not well founded; it fails to acknowledge the distinction between comparison and classification of fingerprints, which calls for the skill of a fingerprint identification expert, and the ability to recognize and lift a clear and usable print. Officer Olsen never attempted to make an identification based on fingerprint comparison. Defendant acknowledged at trial that Officer Olsen was qualified to lift fingerprints. We find that Olsen was qualified to testify as to the fact of whether any prints were lifted. Cf. State v. Yoxtheimer, 301 So.2d 318 (La.1974).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends, in this assignment of error, that the trial court erroneously allowed the police officer who had initially taken the defendant into custody, to compare a two year old photograph of the defendant taken on the date of his arrest, with his appearance on the day of the trial. Defendant's objection, overruled by the trial judge, was that the requested comparison called for the witness' conclusions, and thereby invaded the province of the jury.
Generally, Louisiana evidence law bars admission of opinion testimony by lay witnesses. La.R.S. 15:463. It is well settled, however, that this prohibition does not prevent a lay witness from testifying as to natural inferences drawn from facts he personally observed, provided he states the facts observed. State v. Roche, 341 So.2d 348 (La.1977); State v. Glover, 340 So.2d 1346 (La.1976); State v. Clark, 340 So.2d 1302 (La.1976); State v. Neal, 321 So.2d 497 (La.1975).
The witness called upon to make the comparison responded not only in reliance on the photograph shown to him, but also on the basis of his personal observation of the accused at the time he was taken into custody. The factual bases from which the inference was drawn were presented to the jury.
Consequently, we find no error in the ruling of the trial judge. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 12
The State, during rebuttal, offered the testimony of an inmate from the parish prison, to contradict certain testimony given by two of defendant's alibi witnesses. After cross-examination by defense counsel, during which this witness' credibility was questioned, the State's attorney on re-direct asked a series of questions designed to rehabilitate the witness' credibility. Defense counsel objected to the following question propounded by the State's attorney, as leading:

*885 "You say in the jail parlance, you are known as a rat; that is the same word more or less as a fink?
"* * *
"You got that reputation because you testified [informed] about a jail break that was going to go down and you saved a life. Is that how you got it?"
Defendant's objection was overruled, and the judge's ruling forms the basis of the present assignment of error.
La.R.S. 15:277 provides:
"A leading question is one which suggests to the witness the answer he is to deliver, and though framed in the alternative, is inadmissible when propounded to one's own witness, unless such witness be unwilling or hostile."
The State does not contend that its inmate witness was "unwilling or hostile," and we find the question asked defective as defendant contends. The trial judge's ruling was erroneous.
Nevertheless, we do not find the error prejudicial so as to mandate reversal. When defense counsel was cross-examining this witness concerning previous occasions in which the witness had assisted police officers, he elicited the following testimony:
"Q. Did you assist them [certain law enforcement officers] in respect to another case in order to assist yourself * * *?
"* * *
"Q. Would you explain what you did?
"A. Okay. There was an attempted escape going to come down; one officer was going to be killed, two others going to be held hostage and going to take over the jail. Due to the fact of my charges were so light I did not want to participate in it, and I tipped off the authorities inside the jail and it was stopped."
Since the testimony suggested by the leading question previously had been elicited by defense counsel, we regard the trial judge's ruling on defendant's objection to the leading question as non-reversible error. La.C. Cr.P. art. 921. Cf. State v. Smith, 285 So.2d 240 (La.1973); State v. Maiden, 258 La. 417, 246 So.2d 810 (1971).
This assignment does not demonstrate reversible error.

ASSIGNMENT OF ERROR NO. 13
In this assignment, defendant complains that the trial judge committed reversible error in refusing to allow the jury to view, during their deliberations, a police radio log which had been admitted into evidence.
Louisiana Code of Criminal Procedure Article 793 provides:
"A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict."
In State v. Freetime, 303 So.2d 487 (La. 1974), this Court recently interpreted this article as prohibiting submission to the jury during deliberation of written confessions. In so holding we commented:
"The physical-examination-required exception to the prohibition against documentary evidence going to the jury came into the jurisprudence (see 31 Tul.L.Rev. 693) with dictum in State v. Colbert, 29 La.Ann. 715 (1877). That decision upheld the trial court's refusal to let an affidavit properly introduced in evidence to go to the jury for its deliberations, but noted that such might be done in instances such as where `it was necessary for a jury to compare handwriting.' 29 La.Ann. 717.
"The re-examining of a documentary exhibit for its verbal content has not been included as an allowable purpose of `physical examination.' We found no Louisiana decision where, over objection, the jury was afforded access to a documentary, after the case was submitted to it, for such purpose. To the contrary, convictions have been reversed when, over objection, *886 documentary exhibits were given to the jury for the purpose of permitting it access to the verbal contents thereof. State v. Arnaudville, 170 La. 151, 127 So. 395 (1930) (account book); State v. Harrison, 149 La. 83, 89, 88 So. 696 (1921) (bloodhound pedigrees)." 303 So.2d at 489.
It is apparent the jury wished to examine the police radio log for its verbal content and not for its physical characteristics. Therefore, the trial court ruling was correct. See also, State v. McCully, 310 So.2d 833 (La.1975).
We find no merit in this assignment of error.

ASSIGNMENTS OF ERROR NOS. 14, 16, 17 and 18
At the hearing on defendant's motion for new trial, the trial judge rejected defendant's motion for a continuance based on the absence of two material witnesses.[4] The hearing on the motion for new trial had on previous occasions been continued. When the prior hearings were scheduled, subpoenas for the two witnesses had been requested and issued. Counsel, however, failed to request subpoenas for the subsequent hearing. Because he did not request them, he cannot complain that they were not issued. La.C.Cr.P. art. 731.
The decision to grant or deny a continuance rests in the sound discretion of the trial judge; his ruling will not be disturbed absent arbitrariness or abuse. State v. Sosa, 328 So.2d 889 (La.1976); State v. Williams, 262 La. 317, 263 So.2d 306 (1972). For several reasons, we find no abuse of the trial court's discretion. First, though we do not choose to base our decision solely on the absence of technical formalities because the written motion was filed by the defendant pro se, we note that the motion, though in writing, was not verified by his or counsel's affidavit, as required by law. La.C.Cr.P. art. 707; State v. Weathers, 304 So.2d 662 (La.1974). Second, the sole ground for continuance urged in defendant's written motion was specifically abandoned by the defense. (See footnote 4). Third, the responsibility for failure to subpoena the desired witnesses must be placed on the defendant, who failed to show due diligence in an effort to procure attendance of the witnesses. La.C.Cr.P. art. 709(3).
Defendant also complains that the trial judge improperly refused to allow the defendant to put on evidence in support of his motion for new trial. The record contains not only a motion for new trial, but a supplemental motion therefor, as well as a detailed memorandum in support of the motion. The facts and law relied on by defendant in support of his motion were thoroughly presented to the trial judge.
We have reviewed the factual allegations. The trial judge's apparent conclusion that no purpose would have been served by conducting an evidentiary hearing on the motion for a new trial, does not appear to be an abuse of his discretion. As this Court stated in State v. Barfield, 292 So.2d 580 (La.1974):

"Bill of Exceptions No. 2. This bill was reserved when an evidentiary hearing was denied on the new trial motion. * * For the purpose of the hearing of the motion on the new trial, the judge accepted the facts as related in the affidavit as true, but nonetheless, found that the new evidence would not have changed the verdict. An evidentiary hearing was not necessary and would have merely been repetitious because of the affidavit. The judge did not abuse his discretion in denying this motion." 292 So.2d at 582.
*887 For the foregoing reasons we find no error in the trial judge's rulings denying the requested continuance, declining to allow evidence to be taken, and rejecting defendant's request for a new trial.
Assignments numbers 14, 16, 17 and 18 are without merit.

ASSIGNMENT OF ERROR NO. 15
Defendant herein complains that the trial court abused its discretion in requiring that the defendant be handcuffed during the hearing on the motion for new trial.
It is the responsibility of the trial court to see that criminal proceedings are conducted with dignity and in an orderly and expeditious manner, and to so control the proceedings that justice is done. La.C.Cr.P. art. 17. As a result, the trial judge is empowered in his discretion, to use appropriate measures including physical restraint of an accused to insure that dignity and order prevail, and this authority exists though the jury may be present. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); State v. Burnette, 337 So.2d 1096 (La.1976).
However, our review of the record leads us to the conclusion that the trial judge abused his discretion in this instance. The State suggests that the defendant had been convicted of a serious crime, and that as a consequence, the judge's caution in keeping him handcuffed was justified. Nevertheless, as defense counsel correctly states, the defendant had been unfettered throughout the trial, and had created no outburst or commotion.
Conceding that the trial judge improperly required this defendant to remain handcuffed during the hearing, we are nevertheless unable to agree that the error is reversible. The jury had already rendered its verdict of guilty and was not present. Counsel argues that Passman was inhibited in his ability to take notes or assist counsel. Review of the hearing record reveals that Passman actively participated in the hearing. The degree to which his efforts were handicapped by his restraints was minimal. The error does not warrant reversal. La.C. Cr.P. art. 921.
This assignment does not demonstrate reversible merit.

ASSIGNMENT OF ERROR NO. 19
Defendant assigns error to the trial court's ruling denying his pro se "Writ of Habeas Corpus," in which defendant sought a copy of the trial transcript. The request was denied by the trial judge with the notation: "* * * it is premature. Transcript has not been filed as of this date by the reporter." Defendant relies by analogy on the comments to La.C.Cr.P. art. 297, which indicate that transcripts of preliminary hearings are to be furnished "without delay." Trial ended on March 30, 1976. Defendant's self-styled writ was filed on June 30, 1976.
The present record consists of the entire trial transcript, including voir dire, opening statements, argument and jury instructions. Hearings on all pre-trial and post-trial motions are included, as well as all pleadings filed in this matter. The appeal was lodged in accordance with the rules set forth in La.C.Cr.P. arts. 914-23.
The issue raised by this assignment of error is moot.

ASSIGNMENT OF ERROR NO. 20
After trial, defendant filed, in proper person, an application for "Writ of Habeas Corpus" seeking "full latitude" to act as his own co-counsel and to interview other inmates in the parish prison where he was incarcerated. Defendant urges the latter request was essential, because a fellow inmate had testified against him at trial, and he needed to interview other inmates to prove that witness' testimony was perjured.
In our view the court properly denied defendant's request. Defendant had already been convicted, and his motion for new trial had been denied. Defendant was entitled to and ultimately did seek review of his case on appeal. His efforts could not *888 affect the outcome of his appeal, as they would not be part of the record.
The habeas application was premature, and the right claimed was not one to which defendant was then entitled.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 21
Prior to trial, defendant filed a motion to suppress testimony of extra-judicial identifications of the accused made by Mr. O'Brien, his wife and daughter. One of the witnesses subpoenaed by the defendant was the State's attorney in charge of prosecuting the case. Defense counsel moved to sequester all witnesses, including the prosecutor. Defendant assigns as error the refusal of the trial judge to sequester the State's attorney.
Defendant relies on La.C.Cr.P. art. 764 which provides:
"Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice. (Emphasis supplied.)
The last sentence of the quoted article permits the trial judge to excuse the State's attorney from the sequestration order if it is in the interest of justice. The trial judge is allowed wide latitude in making such a determination. State v. Griffin, 329 So.2d 693 (La.1976); State v. Sneed, 328 So.2d 126 (La.1976); State v. Raymond, 258 La. 1, 245 So.2d 335 (1971), appeal dismissed, cert. den. 404 U.S. 805, 92 S.Ct. 101, 30 L.Ed.2d 38 (1972). We cannot say he improperly exercised his discretion on this occasion.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 22 and 30
Defendant assigns as error the refusal of the trial judge to order pre-trial discovery of certain police investigative reports and of a list of State's anticipated trial witnesses.
Defendant sought, by motion to compel production of exculpatory evidence, police reports which indicated that no fingerprints or blood samples implicating the defendant in the robbery had been discovered by the police. The State willingly informed defendant that it had no fingerprints or blood samples connecting him to the robbery, but maintained that any investigative reports by police officers reflecting the absence of such evidence were not subject to discovery by the defense.
The trial judge correctly agreed with the State, ruling that the State's answers were sufficient, and that defendant was not entitled to the police reports.
A similar issue was presented to this Court in State v. Owens, 338 So.2d 645 (La.1976). There the defendant sought evidence that the .22 caliber pistol allegedly used by the defendant had not been test fired, and that no shells were found at the scene of the crime. In sustaining the trial judge's ruling refusing to grant a mistrial on the ground that such evidence was not produced by the State, this Court observed:
"Information on the test firing of the gun and the absence of shells is simply not `exculpatory evidence' required to be disclosed under Brady v. Maryland, [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)]." 338 So.2d at 652.
Additionally, we note that under Louisiana law police reports are considered confidential, and generally the State may not be compelled to produce them for inspection. State v. Banks, 341 So.2d 394 (La.1976); State v. Square, 257 La. 743, 244 So.2d 200 (1971).[5] It is therefore our opinion *889 that defendant was not entitled to copies of the police reports he sought to discover.
Likewise, the trial judge correctly denied defendant's request, made by prayer for oyer, for a list of the witnesses the State intended to call at trial. Defendant is not entitled under Louisiana law to this information. State v. Chase, 327 So.2d 391 (La.1976); State v. Thomas, 310 So.2d 517 (La.1975); State v. Browning, 290 So.2d 322 (La.1974); State v. Thomas, 290 So.2d 317 (La.1974).
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 23 and 25
In these assignments, defendant complains that the trial court improperly limited the scope of examination during the hearing on defendant's motion to suppress Miss Cara O'Brien's identification of the defendant as one of the perpetrators of the robbery. Defense counsel was questioning one of the officers who had transported Miss O'Brien from her home in St. Tammany Parish to the Hammond Police Station, where she identified Passman as one of the intruders. Counsel was permitted to examine this officer thoroughly with respect to the events leading up to and including Miss O'Brien's identification of the accused. But when counsel attempted to discover what conversation took place after the identification, on the way back to the O'Brien home, the State objected on the ground that the testimony was not relevant to the issue before the courti. e., the validity of the identification proper. The trial judge sustained the State's objection, and it is this ruling that defendant assigns as error number twenty-three.
Likewise, after Miss Cara O'Brien testified that she could not remember having made a photographic identification of the accused, as defense counsel continued to question her regarding the circumstances under which she viewed a book of "mug shots," the State objected on the ground of materiality. The objection was sustained by the trial judge, and his ruling now forms the basis of assignment of error number twenty-five.
With respect to Cara O'Brien's identification of the accused, the motion to suppress being argued was addressed simply to an alleged improper "line-up" conducted at the Hammond Police Station, and defendant's contention that a subsequent in-court identification would necessarily be tainted by that procedure. The motion neither referred to, nor sought suppression of a photographic identification of the accused by this witness.
In view of the fact that the line-up identification could not have been tainted by events occurring subsequent thereto, and because the witness testified that she could not remember making a photographic identification of the accused, we do not find the trial judge's rulings improper.
Even during the course of trial, the trial judge is accorded broad discretion to end irrelevant and immaterial questions. State v. Robinson, 342 So.2d 183 (La.1977); State v. Ardoin, 340 So.2d 1362 (La.1976); State v. Corey, 339 So.2d 804 (La.1976). This same measure of discretion exists in rulings on relevancy made during the course of a hearing on a motion to suppress.
After careful examination of the transcript of the entire hearing on the motion, we are unable to conclude that the judge's rulings in these instances constituted an abuse of discretion. Defense counsel was accorded wide latitude in questioning the witnesses called to testify at the hearing regarding the issues raised in the motion to suppress.
These assignments of error do not demonstrate reversible error.

ASSIGNMENT OF ERROR NO. 24
At the hearing on the motion to suppress, defense counsel propounded certain leading questions to Miss Cara O'Brien. The State objected, on the authority of La.R.S. 15:277, arguing that Miss O'Brien had been subpoenaed to testify by the defendant, who according to the language of *890 La.C.Cr.P. art. 703 bore the responsibility of proving his motion, and that she could not be asked leading questions unless she was shown to be unwilling or hostile. Counsel then asked the trial judge declare her a hostile witness, and the judge refused, observing that she had not shown any hostility.
We have previously held that a defendant is not entitled as a matter of course to call witnesses at a motion to suppress hearing, and then to subject them to cross-examination. State v. Rogers, 324 So.2d 403 (La.1975). Of course, the trial judge is vested with discretion to allow leading questions where the witness demonstrates hostility or an unwillingness to cooperate with counsel's examination. State v. Peters, 302 So.2d 888 (La.1974), cert. den. 423 U.S. 878, 96 S.Ct. 151, 46 L.Ed.2d 111 (1975); State v. Fallon, 290 So.2d 273 (La. 1974); State v. Fulmer, 263 La. 971, 270 So.2d 116 (1972).
After review of Miss O'Brien's testimony at the hearing on the motion to suppress, we are unable to conclude that the trial judge abused his discretion in ruling that she was not hostile or uncooperative, or in sustaining the State's objection to the leading questions propounded to her.
This assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 26 and 27
In these assignments of error defendant challenges the trial court's refusal to grant his motion to suppress the in-court identifications of him by Mr. and Mrs. Pat O'Brien and their daughter Cara. It is defendant's contention that earlier improper visual or photographic identifications tainted the subsequent in-court identifications, resulting in prejudicial error to the accused.
Within two or three hours of the robbery, Miss O'Brien was taken from her home to the Hammond Police Station to view a suspect who had been taken into custody. The suspect was Glenn Passman. No formal "line-up" was conducted at the police station because, as Miss O'Brien was being escorted to the door of the station from the parking lot, she passed by a large window and noticed the accused inside. Immediately she identified him as one of the intruders.[6]
Ample evidence supports the finding of the trial judge that this inadvertent confrontation was not so inherently prejudicial as to be inadmissible, or to taint Miss O'Brien's subsequent in-court identification of the accused; this finding is entitled to great weight. E.g., State v. Peters, 315 So.2d 678 (La.1975).
We acknowledge that there were slight inconsistencies between the testimony of Miss O'Brien and the officers regarding the sequence of events leading to the identification. Likewise, we note that there was some testimony which suggested that Miss O'Brien's viewing of the defendant through the window, rather than at a formal line-up, was not altogether accidental. Nevertheless, we find that the bulk of the evidence supports the trial judge's ruling, and, in any event, there is demonstrated in the record ample independent basis for Miss O'Brien's in-court identification of the accused apart from the supposedly tainted identification. See, State v. Williams, 341 So.2d 370 (La.1976); State v. Anthony, 332 So.2d 214 (La.1976); State v. Judson, 329 So.2d 742 (La.1976); State v. Peevy, 321 So.2d 324 (La.1975).
Defendant likewise sought to exclude in-court identifications of the accused by Mr. O'Brien and his wife, on the ground that their testimony would be tainted by an earlier improper photographic identification. A series of twelve photographs had been shown to these witnesses. All were black and white photographs with the exception of onethe photograph of Glenn Passman. That photo was in color, and it is *891 contended this fact rendered any photographic identification invalid, and operated to taint the subsequent in-court identification.
We are inclined to agree with defendant that the photographic show-up was tainted. It is not appropriate for police officers to assemble photographs for display to witnesses for purposes of identification wherein all prints are similar in character except that of the principal suspect. State v. Williams, supra. The fact that Passman's picture alone of the twelve exhibited was a color print, drew attention to it in an impermissibly suggestive way.
Nevertheless, we do not find error in the trial judge's refusal to exclude either Mr. or Mrs. O'Brien's in-court identification. As previously noted, if the record demonstrates an independent basis for the incourt identification apart from the tainted identification, due process does not compel suppression of the in-court identification. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); State v. Williams, supra; State v. Anthony, supra; State v. Judson, supra; State v. Peevy, supra; State v. Bland, 310 So.2d 622 (La. 1975). After reviewing the record we have no doubt that there existed a substantial independent and untainted basis for the witnesses' in-court identification.
Passman and his confederate were in the O'Brien home some twenty to twenty-five minutes; neither wore a mask. Lighting in the house was said to be good. Facts adduced at trial demonstrated that each of the O'Brien's had ample opportunity to view Passman at the time the offense was being committed.
For the foregoing reasons assignments of error numbers twenty-six and twenty-seven do not present reversible error.

ASSIGNMENT OF ERROR NO. 28
On June 10, 1975 defendant in proper person filed a motion seeking to recuse all judges of the Twenty-second Judicial District Court, alleging that the three judges harbored feelings of prejudice and bias against him. The motion was referred to Judge Burrell Carter of the Twenty-first Judicial District Court.
At the conclusion of the hearing on defendant's motion, Judge Carter made the following ruling:
"The finding of this Court in the matter [is] to recuse Judge Wallace Edwards,[7] and Judge Tanner is denied. There was no believable evidence to indicate any bias or prejudice on the part of either of these Judges. I heard the opinions and conclusions of both Mr. Passman and Mr. Burnette, but those opinions and conclusions do not constitute legal evidence. There is absolutely no legal evidence to justify a recusing of the two Judges remaining, that is Judge Tanner and Judge Crane. [sic]
"Now Mr. Passman, apparently you have had a very difficult time and your road ahead is not going to be a smooth one. The only thing that I can say to you is that it is my opinion that either of these Judges or there will be a new Judge in this district in my opinion will give you a fair day in Court."
Defendant objected to, and now assigns as error the failure of the district judge to recuse Judges Tanner and Crain.
Based on the evidence adduced at the hearing on the motion to recuse, we find the ruling of the district judge correct.
There is no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 29
Defendant assigns as error the trial judge's refusal to grant his motion for reduction of bail prior to trial.
As this Court recently said in State v. Jones, 332 So.2d 267 (La.1976):
"* * * The defendant complains of the trial court's failure to reduce his bond *892 prior to the trial. On an appeal after conviction, the issue is moot. Timely invocation to this court's supervisory jurisdiction at the time of denial of reduction is the appropriate avenue of review. La. C.Cr.P. art. 322: State v. Bradford, 298 So.2d 781 (La.1974); State v. Cosey, 261 La. 550, 260 So.2d 620 (1972)." 332 So.2d at 269.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 31
Defendant complains in this assignment that the trial court erred in allowing the State's attorney to comment in rebuttal argument on the testimony of a State's witness whose testimony had not been referred to by defense counsel in his closing argument. It is defendant's position that the proper scope of rebuttal argument was exceeded by the State's attorney. See, La. C.Cr.P. art. 774.
We need not consider whether the prosecutor's comments exceeded the scope of proper rebuttal argument. When defense counsel objected to the reference, the State's attorney replied:
"I am not restricted, may it please the Court. I will drop it."
The prosecutor made no further reference to this witness or his testimony in the remainder of his argument.
It is defendant's position that the trial court committed error in failing to admonish the jury that the prosecutor's statements were indeed improper, and should have been disregarded. We note that neither an admonition nor a mistrial was requested by defense counsel. La.C.Cr.P. arts. 770, 841. Defendant is not now entitled to complain of the trial judge's failure to admonish the jury.
This argument is without merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
NOTES
[1] La.C.Cr.P. art. 797(4) provides:

"The state or the defendant may challenge a juror for cause on the ground that: * * * (4) The juror will not accept the law as given to him by the court; * * *."
[2] The ABA Standards Relating to the Prosecution Function, § 5.2:

"(a) The prosecutor should support the authority of the court and the dignity of the trial courtroom by strict adherence to the rules of decorum and by manifesting an attitude of professional respect toward the judge, opposing counsel, witnesses, defendants, jurors and others in the courtroom.
"(b) When court is in session the prosecutor should address the court, not opposing counsel, on all matters relating to the case.
"(c) It is unprofessional conduct for a prosecutor to engage in behavior or tactics purposefully calculated to irritate or annoy the court or opposing counsel.
"(d) A prosecutor should comply promptly with all orders and directives of the court, but he has a duty to have the record reflect adverse rulings or judicial conduct which he considers prejudicial. He has a right to make respectful requests for reconsideration of adverse rulings.
"(e) A prosecutor should be punctual in all court appearances.
"(f) Prosecutors should take leadership in developing, with the cooperation of the courts and the bar, a code of decorum and professional etiquette for courtroom conduct." (Emphasis supplied.)
[3] The ABA Standards Relating to the Prosecution Function, § 5.7(a):

"(a) The interrogation of all witnesses should be conducted fairly, objectively and with due regard for the dignity and legitimate privacy of the witness, and without seeking to intimidate or humiliate the witness unnecessarily. Proper cross-examination can be conducted without violating rules of decorum." (Emphasis supplied.)
[4] Defendant's written motion for a continuance was based solely on the ground that a transcript of certain trial testimony alleged to be false, was not yet available to the defense. This ground was abandoned by counsel after the State's attorney and the court reporter indicated that the transcript excerpts requested had been prepared several weeks before, and a copy furnished to counsel. Counsel stated,

"If [the court reporter] did give me a copy [of the transcript requested], I assume it, because he says he did, and then I have misplaced the copy, and I retract that as a grounds for asking for my continuance."
[5] Of course, a defendant is entitled to a copy of a police report if it is established that there is an inconsistency between the officer's testimony at trial and his report, or when the officer's testimony at trial is given in reliance upon the report rather than from memory. State v. Banks, supra; State v. Bolton, 337 So.2d 446 (La.1976); State v. Monroe, 329 So.2d 193 (La. 1976). However, this exception is inapplicable in the instant case.
[6] The testimony of Miss O'Brien and the officers who accompanied her was that four or five other men were in the room with Passman, and that only one of them was in uniform. The others in the room, some of whom were undercover narcotics agents, were dressed in "street clothes."
[7] Judge Edwards was recused because he had been elected to the court of appeal and was preparing to assume that office.