341 So.2d 370 (1976)
STATE of Louisiana
v.
Edward C. WILLIAMS.
No. 58319.
Supreme Court of Louisiana.
December 13, 1976.
*373 C. Alan Lasseigne, Thibodaux, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Francis F. Dugas, Dist. Atty., John J. Erny, Jr., Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
On June 10, 1975, Georgette Marlow, the cashier at the Cabin Boy Restaurant in Thibodaux, Louisiana, was robbed by a man holding a gun. Some two hours later Edward Williams was arrested for the armed robbery. He was tried in February of 1976, found guilty as charged, and sentenced to sixty years at hard labor. He now appeals his conviction and sentence on the basis of fifteen assignments of error.
ASSIGNMENT OF ERROR NO. 1.
Defendant objected at trial to the introduction into evidence of a twenty-two caliber pistol, three bullets taken out of the pistol, and photographs of the gun and defendant's fingerprint found on the gun. He argues that the state did not establish that the gun was the one used by the man who robbed the cashier at the restaurant.
The twenty-two caliber pistol along with some money was found rolled up in a brown shirt about thirty feet from where defendant Williams was arrested. He was in his car in a wooded area, and the items were found at the base of a nearby tree. The officer who discovered the items testified that leaves and debris were pushed around in a manner suggesting concealment. Moreover, although none of the three witnesses testified that they could positively identify the gun as the one brandished by the robber, each of the three eye witnesses who testified described the gun used as nickel or chrome plated, as was the gun introduced into evidence, and one witness testified it was similar to the one used in the robbery.
Defendant specifically directs the Court's attention to the testimony of the victim, Georgette Marlow, who testified that the gun used was thirty-eight caliber. Although this witness first testified that the gun used was a thirty-eight, she later explained that she had first believed it was a thirty-eight because her fiancee, who was also a witness to the robbery, had told her that it looked like a thirty-eight. Moreover, the police officer who discovered the gun in *374 the woods testified that he at first thought it was the larger gauge gun.
Louisiana Revised Statute 15:441 defines relevant evidence as evidence "tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent." A trial judge determines whether evidence is relevant by deciding whether it bears a rational connection to the fact which is at issue in the case. State v. Freeman, 306 So.2d 703 (La.1975). Stated another way, the test for relevancy of physical evidence is whether it is "more probable than not that the object is the one connected with the case." State v. Collins, 328 So.2d 674 (La. 1976). Since there was testimony that the twenty-two caliber gun looked like the one used in the robbery, since it matched the general description of the weapon, and since the gun containing defendant's fingerprint was found near defendant soon after the robbery in a place hidden from view, we find that the trial judge did not err when he determined that the pistol was relevant and admitted it in evidence. Since the gun was admissible, the bullets taken from the gun and the photographs of the fingerprint found on the gun were likewise relevant and admissible.
We find, therefore, that the trial judge properly permitted the introduction into evidence of these items.
ASSIGNMENTS OF ERROR NOS. 2, 3 and 4.
These assignments deal with the in-court identification of defendant Williams by three eye-witnesses, Georgette Marlow, Mattie Lee Taylor, and Brenda Alexis.
Shortly after the robbery, these women were taken to police headquarters where they viewed photographs. Brenda Alexis also viewed defendant in a one-man showup. Defendant contends that these procedures were impermissibly suggestive and tainted the in-court identifications made by these three women.
The photographs shown to the women were in two sets. In one set of photographs, all but one were five by four inch mug shots. The fifth was a picture of defendant which was not a mug shot and which was much larger, eight by five inches. In the second set, defendant's picture was a polaroid print three and one-half inches by four and one-half inches taken of him wearing ordinary clothing after he was brought to the police station. The other pictures in this set were, again, four by five inch mug shots of men in prison clothing. Each of these witnesses was shown the two sets of pictures and each identified defendant's picture as the perpetrator of the crime in one of the two sets, or both of them.
Defendant argues that the fact that his picture was not of the same size and type as the other photographs used in the show-up made the show-up suggestive, citing Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). Further, the defendant argues that the procedure was suggestive because the police encouraged one of the witnesses to carefully examine defendant's picture and because with respect to the two sets of photographs one witness knew all of the persons depicted except defendant, and another witness knew some of the persons depicted, although not the defendant.
In their testimony, the police officers explained why defendant's picture was different from the others shown to the witnesses. The photo in the first set was obtained from the Terrebonne Parish Sheriff's Office. After receiving the radio dispatch of the robbery at the Cabin Boy Restaurant, two of the officers saw a white Chrysler driven by a man who fit the general description relayed in the dispatch. The car was stopped for a light about two in the morning approximately a mile and a half from the scene of the robbery. The officers recorded the license number of the car and a routine check was made for the owner. Defendant's name was transmitted as the owner and his picture was sent to the sheriff's office. This was the picture used in the first set. Since the picture was evidently not a recent one, the police officers decided to photograph the suspect. Because they were out of the film used in the camera *375 with which they took mug shots, the officers took defendant's picture with a polaroid camera they had.
Although defendant argues that one witness, Georgette Marlow, was coaxed by police to carefully examine defendant's picture, our reading of the record reveals that she was steadfast in her assertions that the officers did not suggest that defendant was the man who committed the crime. Although she was told that a suspect was being held, no suggestion was made that defendant was the suspect. She was simply urged to look at the picture carefully so as to make sure of her identification.
Defendant further argues that the one man show-up was impermissibly suggestive. One of the witnesses, Brenda Alexis, told the officers, as she had told other witnesses during the course of the robbery, that she recognized the robber because she had attended Southdown High School with him some years before. Either before or after she had identified defendant from the sets of photographs (she did not remember which), she was told that defendant had been arrested. At her request, she was allowed to view him through a one-way mirror. She evidently told the officers that she wanted to be certain of her identification.
Certainly it is not appropriate for policemen to assemble photographs for viewing wherein all prints are similar in character and size except that of the chief suspect. And, of course, in this case two sets of photographs were used, in each of which defendant's print was visibly distinguishable from the others. This doubtful situation was aggravated by the fact that one witness was asked to carefully examine defendant's picture, and two of the witnesses, as earlier related, knew many of the men in the photographs. All of these facts are certainly to be avoided in show-up procedures, where possible. Additionally, one witness experienced a one-on-one lineup.
When appellate courts review an identification procedure, the court must decide whether the photographic lineup was so unnecessarily suggestive and conducive to irreparable mistaken identification that defendant was denied due process of law. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); State v. Hargrove, 330 So.2d 895 (La.1976). In making this determination, courts must consider the totality of the circumstances.
We have carefully considered the circumstances surrounding these photographic lineups displayed to three witnesses and have concluded that their legality is a close issue. The one-on-one identification procedure, not at all favored in our law, Foster v. California, supra., and State v. Newman, 283 So.2d 756 (La.1973), was suggestive and therefore impermissible. Even if we were to conclude, however, that the photographic show-ups were also so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification, we would still have to determine whether the witnesses' in-court identification was based on an independent source and thus not violative of defendant's right to due process of law. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); State v. Bland, 310 So.2d 622 (La.1975) and the cases cited therein. This latter determination is indeed made necessary by our finding that the one-on-one lineup was impermissible.
A determination of whether the witnesses' in-court identification was based on the independent source involves three factors: the prior acquaintance of the witness with the accused; the length of time the witness observed the perpetrator before, during and after the commission of the offense; and the circumstances under which the observation was made. State v. Newman, supra., and the cases cited therein.
These women saw the unmasked perpetrator clearly in the restaurant for a period of about fifteen or twenty minutes. According to the testimony of all the witnesses, the restaurant was well-lighted. One of the women, Mattie Lee Taylor, was facing defendant directly when he entered *376 the restaurant, and when he gave her the "power sign" she returned it. The cashier, Georgette Marlow, stood directly across the counter facing the robber nearly the entire time he was in the restaurant. Brenda Alexis had known defendant from school and told her companion that she recognized him as soon as she saw him in the restaurant. She testified that she watched the man during the robbery, but that she was calm and not afraid.
After reviewing these factors, we agree with the trial judge that these witnesses identified the accused in court based on their viewing of him during the robbery, and that Ms. Alexis identified him additionally on the basis of her previous acquaintance with him. Therefore, we believe that even though the police officers, who should have placed defendant in a live lineup, allowed Ms. Alexis to view defendant in this impermissible way, and conducted a suspect photographic show-up with all three women, these procedures do not, in the particular circumstances now before us, require that we reverse defendant's conviction, because we find that each of the three incourt identifications was based on an independent source.
For these reasons, assignments of error two and three lack merit.
In assignment number four defendant Williams, a black man charged with committing a crime known to have been committed by a black man, claims that he was denied a fair trial because when a witness identified him at trial he was the only black in the courtroom.
At three times during the trial, defendant raised the fact that defendant Williams was the only black man in the courtroom. However, defendant did not ask for a mistrial on that basis, or make any objection, or request any action on the part of the trial judge to rectify what he now argues was a prejudicial situation. He simply made it a part of the record that this situation existed. Since defendant is not alleging error in a ruling below, there is nothing now before us for review. C.Cr.P. art. 920.
ASSIGNMENTS OF ERROR NOS. 5, 6 and 15.
Defendant contends in these three assignments that he was denied effective cross-examination of state witnesses by the rulings of the trial judge. The first objection was made when the judge did not allow Ms. Alexis to answer defendant's question whether she thought that her previous testimony that she knew defendant in high school might be incorrect if she learned defendant had had brothers at Southdown High School. She was asked this question immediately after she had answered, in response to defendant's question, that she did not know any of defendant's brothers. Next, defendant contends that he was not allowed to asked Ms. Alexis how many grades there were at the school. Previously, she had been questioned extensively concerning the number of students at the school, the number of classes, the size of the building, and numerous other matters concerning the school.
We find no error in either of these rulings. The trial judge is afforded wide discretion in the examination of witnesses at trial. La.R.S. 15:275; State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972); see 21 Loyola L.Rev. 320 (1975). When a state witness has been repeatedly cross-examined on a single subject, the trial judge who sustains the state's objection to such prolonged questioning does not abuse his discretion.
Defendant's next complaint arose in the following manner. His lawyer asked a police officer about his training in regard to lineups. The officer thereupon related that the witness (Ms. Alexis) told him she had gone to school with the man, so after she identified him in the photo "she requested to take a look at him through the mirror. So we did so." Defense counsel objected to the witness' answer contending it was clearly not responsive to the question and that it was offered by the officer both to evade the question and to justify his action in conducting the one-man show-up. This objection is without merit. The unresponsive *377 answer did not in any way prejudice defendant, for the jury had already heard from Ms. Alexis that she recognized the robber as a man with whom she had gone to school, that she had identified his photo, and that she had asked to see him in order to corroborate her identification.
Another defense objection followed during the questioning of a police officer who was asked whether one of the pictures used in the show-up was grossly exaggerated in size and not in accord with the procedures he had been taught for the identification viewing of photographs. Again, no prejudice resulted from the court's sustaining the state's objection to the question. Full and complete questioning was allowed at trial concerning the size of the photograph and the size of photographs usually submitted. Also, the district attorney repeatedly agreed to stipulate that the difference existed. The jury was well apprised of the difference and its significance in possibly affecting the reliability of the witnesses' identification.
Defendant complains that the court denied the defense an opportunity to recross-examine a state witness after the district attorney, on re-direct, introduced the "identification" pictures in evidence. The trial judge correctly stated that the defendant used these pictures in fully interrogating the witness (Brenda Alexis) about them, and nothing new was brought out with respect to them on re-direct. Since nothing new came before the jury when the state introduced the pictures on re-direct, denial of re-cross was not erroneous. La.R.S. 15:281.
Finally, defendant complains of the trial judge's refusal to allow two look-alike pictures to be used by defense counsel in cross-examination of Ms. Alexis. The pictures themselves are not part of the record before this Court because the trial judge sustained defendant's own objection to their admission into evidence. According to the comments of the trial judge, however, the pictures were of two white males approximately fifty-five years of age who were not related, but whose pictures seemed to be of the same person. Although these men were in no way connected with the robbery at the Cabin Boy Restaurant, the defense counsel wished to show them to the witness in the hopes of securing from her an admission that there are look-alike people in the world, and, generally, to test her ability to identify people. The defense position throughout the trial was that defendant was mistakenly identified by these witnesses because he apparently looked very much like the perpetrator.
We find no abuse of discretion in the trial court's ruling. When a defendant attempts to cross-examine a state witness through the use of a physical object not relevant to the issue at hand, it is not error for the trial judge to refuse to allow such procedure. State v. Nix, 327 So.2d 301, 345 (La.1976). While it might have been preferable for the court to have allowed the use of these photographs for the stated purpose, we cannot say that his refusal to do so constitutes reversible error.
For these reasons, we find that the trial judge's rulings did not deny defendant effective cross-examination of witnesses. Hence, assignments five, six and fifteen lack merit.
ASSIGNMENT OF ERROR NO. 7.
Defendant Williams objected to the alleged hearsay testimony of Deputy Carrol Delaune who testified that after defendant was taken from the rear seat of his Chrysler in Acadia Woods:
"The subject gave us his name, which was Edward Williams, and he said he was from Houma. At that time Lt. Adams advised me that he fit the description"
An objection was made and overruled.
Defendant submits that this testimony was inadmissible hearsay under La.R.S. 15:434 which, coupled with the alleged infirmities of the identification procedures, created prejudice in that it bolstered the identifications.
The assignments lacks merit. Apparently the officer made the remark so as to *378 explain the reason for Williams' arrest which followed. See State v. Sneed, 328 So.2d 126 (La.1976); State v. Brown, 326 So.2d 839 (La.1976). The remark did not bolster identification because when defendant was arrested no one had yet identified him. This is not an instance where an officer related a witness' out-of-court identification of a defendant such as we found inadmissible in State v. Jacobs, (La.1976), No. 57,629 and State v. Ford, 336 So.2d 817 (La.1976). Here the officer did not identify defendant as the perpetrator nor did he repeat anyone else's identification of Williams as the robber. He merely related that another officer had told him that Williams fit the robber's description. This remark was not hearsay because, although it was the statement of a third person, it was offered to prove that the utterance occurred, prompting the witness to arrest defendant, and not to prove the truth of the facts recited. State v. Monk, 315 So.2d 727 (La.1975). The officer here was attempting to explain why he arrested the accused; he was not testifying that defendant at that point was identified to him as the robber. State v. Richey, 258 La. 1094, 249 So.2d 143 (1971). Even if the remark were to be deemed inadmissible hearsay, we would not find reversibly prejudicial the out-of-court statement of a fellow officer simply that defendant fit a general description of a robbery perpetrator. C.Cr.P. art. 921. The assignment lacks merit.
ASSIGNMENTS OF ERRORS NOS. 8 and 9.
These errors relate to alleged prejudicial comments made by the district attorney in closing argument and by a state witness.
The first of these occurrences was when the prosecutor, in rebuttal, stated:
"There were two sets of photographs. Second about these photographs is that one set of these photographsthe big one, the one that he complains about, is like all the rest of the photographs in that it's a picture of a criminal with a mugshot, with a number beneath it."
Defendant moved for a mistrial which was denied. Defendant then moved for an admonition to the jury "that they are to disregard that this man is a criminal and is nothing but a mugshot (sic), which is standard booking procedure, and no implications are to be made." The trial judge agreed with defense counsel and admonished the jury as follows:
"You are to disregard any comment by the Assistant District Attorney that may have an inference or a connotation that the accused has been convicted of any crime."
DISTRICT ATTORNEY: I apologize.
THE COURT: And as far as you are concerned this man has not been convicted of any crime whatsoever, and you are to disregard any statement or comment by the District Attorney, which would imply that he has. You are not to consider that comment or any inference of that comment in your deliberations whatsoever."
DEFENSE COUNSEL: Thank you, Your Honor."
Defense counsel did not tell the judge that he felt the admonition given was insufficient to cure the prejudice of the prosecutor's remark, nor did he renew his motion for a mistrial.
An error cannot be availed of on appeal if the party has not made known to the court the action which he wishes the court to take. C.Cr.P. art. 841. Here, the court did admonish the jury to disregard the prosecutor's remark and the attorney merely said "Thank you", leaving the impression that he was satisfied that the judge's admonition cured any possible prejudice.
Even had defendant objected to the admonition we would find no error here. The picture the prosecutor referred to was not in fact a mug shot, but was the polaroid picture of the defendant taken in the police office. Much of the trial testimony centered around this picture and it was viewed by the jury repeatedly, often at defendant's request. There is no error presented here.
*379 Defendant complains of two other remarks made by the prosecutor in closing argument. He argues that the assistant district attorney implied that it was the defendant's burden to prove his innocence when he said: "It [the testimony of a defense witness] didn't say that Edward Charles Williams didn't rob the Cabin Boy." Defendant also argues that the assistant district attorney, in rebuttal, implied that the number of witnesses was crucial, rather than the veracity or accuracy of their testimony, when he said: "If we can't convict a man of armed robbery when three people come in and they put their finger in his face and say, `He's the one that did it' then we can't convict him."
Defendant did not object to either of these remarks by the prosecutor, ask for an admonition, or move for a mistrial. As a result, he cannot raise the issue on appeal. C.Cr.P. art. 841. Moreover, even had defense counsel made known to the trial judge his objection to the remarks, these remarks were essentially comments upon the evidence, a proper function of the prosecutor in closing argument. C.Cr.P. art. 774.
Finally, defendant complains about the testimony of a police officer to the effect that defendant Williams had been arrested at a previous time. Here too the defendant did not make known to the trial judge that he objected to the testimony, or why he objected. C.Cr.P. art. 841. The trial judge therefore was not alerted of the possibility of error at a time when the error could have been cured. Therefore, this argument, like the others in assignments of error eight and nine, lack merit.
ASSIGNMENTS OF ERROR NOS. 10 and 11.
In these assignments defendant complains of the sixty-year sentence which was imposed by the trial judge. Specifically he complains in assignment number ten that the trial judge refused to exercise his discretion to sentence defendant to a term of from five to ninety-nine years for the crime of armed robbery. In assignment number eleven he complains that the judge erred when he refused to accept the pre-trial plea bargain between defendant and the state wherein the defendant agreed to plead guilty to armed robbery and the state agreed to recommend a sentence of nine years.
Upon defendant's objection to the sixty year sentence, the trial judge made certain comments the meaning of which we construe to be as follows: that the judge personally did not consider nine years adequate punishment for the commission of an armed robbery in any case; that the minimum sentence he had ever previously imposed was thirty to thirty-five years; that in the case at hand he would not consider imposing less than thirty-five years; that an armed robbery is the most dangerous crime possible, next to murder, and he treats it with gravity.
R.S. 14:64 does indeed provide that for its commission a person "shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years without benefit of parole, probation or suspension of sentence." (emphasis added) The statute grants the trial judge a wide range of discretion and in effect directs that the trial judge shall consider that full range of sentencing in his deliberation.
We have this date examined the exercise of a trial judge's discretion in imposing punishment upon a person who has violated a condition of his probation. State ex rel. Robertson v. Maggio, Warden, 341 So.2d 366 (La.1976), No. 58,299. There we found error in the judge's refusal to exercise the discretion placed in him by the legislature. We said that:
"The fact that the legislature in enacting Louisiana Code of Criminal Procedure Article 900 granted to the judge a wide range of alternatives for dealing with individuals who violate the conditions of their probation indicates that the lawmakers intended the punishment for probation violations to be tailored to the facts of the case, the seriousness of the misdeed, and the needs of the probationer."
*380 Were the trial judge in this case to have made it abundantly clear that he invariably refuses to consider in sentencing for armed robbery the imposition of less than thirty years (or some lesser number in excess of five), we would be constrained for reasons similar to those expressed in Robertson to find such conduct an abdication of his responsibility to exercise the sound discretion mandated by the legislature. However, we do not find that to have been the case here. While the trial judge did express his personal view that nine years for any armed robbery conviction is inadequate, to that extent his opinion being somewhat at variance with that of the legislature, we cannot construe his comments to indicate a refusal on his part to give consideration to the full range of penalty prescribed by the legislature.
In assignment number eleven defendant complains that the trial judge erred when he refused to accept a plea-bargain.
A trial judge is under no statutory duty to accept a plea bargain, and his decision not to do so is not reviewable by this Court. See State v. Green, 221 La. 713, 60 So.2d 208 (1952); ABA Standards, Pleas of Guilty § 3.3 (1968).
For these reasons we find no merit in assignments of error numbers ten and eleven.
ASSIGNMENT OF ERROR NO. 12.
Defendant contends his constitutional rights have been violated because he was not indicted by a grand jury. The theory of this argument is that a possible ninety-nine year sentence without benefit of probation, parole or suspension of sentence can be greater than, or tantamount to, a life sentence.
The crime in this case was committed on June 10, 1975. Article 1, Section 15 of the Louisiana Constitution (1974) provides:
"Prosecution of a felony shall be initiated by indictment or information, but no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except on indictment by a grand jury."
See also La.C.Cr.P. art. 382, as amended, Acts 1974, Ex.Sess. No. 19, sec. 1. Armed robbery is not a capital offense. State v. Monk, supra. Nor does the fact that La. R.S. 14:64 allows a possible ninety-nine year sentence without benefit of probation, parole or suspension of sentence mean that armed robbery is a crime punishable by life imprisonment. The institution of prosecution for armed robbery by bill of information is therefore proper. Assignment of error number twelve is without merit.
ASSIGNMENT OF ERROR NO. 13.
In this assignment, defendant complains that the sentence imposed on him constituted cruel and unusual punishment and a denial of equal protection because the statute under which he was sentenced lacked guidelines to aid the trial judge in his determination of the severity of sentence. Moreover, he urges that the long sentence was excessive in view of the simple, non-aggravated circumstances involved in the armed robbery. We note, however, that we have repeatedly held that sentences imposed within the statutory limits of the armed robbery statute do not constitute cruel and unusual punishment nor a denial of equal protection. State v. Martin, 304 So.2d 328 (La.1974); State v. Howard, 262 La. 270, 263 So.2d 32 (1972), and the cases cited therein.
Likewise we find no merit in defendant's contention that the sixty year sentence imposed was excessive.
ASSIGNMENT OF ERROR NO. 14.
Defendant contends that the jury deliberated from 12:39 p.m. to 2:37 p.m. and were not informed of the fact that they were entitled to lunch. Defendant submits that "the discomfort of having to go without a meal until a verdict was reached, with no alternative presented to them, caused the jury to resolve its differences and convict him."
Requiring deliberation without break during the normal lunch period, by itself, *381 presents no indication that the jury's verdict was improperly influenced. This argument lacks substance.
For the reasons assigned, the conviction and sentence of defendant are affirmed.
SANDERS, C.J., concurs in the decree.