358 So.2d 931 (1978)
STATE of Louisiana
v.
Gregory ROBERTSON and Arthur Mitchell.
No. 60909.
Supreme Court of Louisiana.
April 10, 1978.
*934 William J. O'Hara, III, Supervising Atty., Mary Coffman, Student Practitioner, New Orleans, for Arthur Mitchell.
*935 Linda S. A. Burke, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, for Gregory Robertson.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Gregory Robertson and Arthur Mitchell were charged in the same bill of information with the crime of armed robbery in violation of La.R.S. 14:64.[1] After trial by jury, they were found guilty as charged. Sentence was imposed by the court on Mitchell. Subsequently, the district attorney filed informations accusing Robertson of one previous felony conviction and accusing Mitchell of three previous felony convictions under La.R.S. 15:529.1 (Habitual Offender Law). Robertson admitted the allegations in the information; the trial judge found him to be an habitual offender and sentenced him to serve forty years at hard labor with credit for time served and assessed him sixty dollars court costs or, in default of payment thereof, ordered him to serve an additional thirty days in the parish prison. After hearing, the trial judge found Mitchell to be an habitual offender, vacated the previously imposed sentence, and sentenced him to serve ninety-nine years at hard labor with credit for time served. On appeal, defendant Robertson relies on eighteen assignments of error and defendant Mitchell relies on thirteen assignments of error for reversal of their convictions and sentences.

ASSIGNMENTS OF ERROR NOS. 1, 2 AND 17 (ROBERTSON)

ASSIGNMENTS OF ERROR NOS. 3, 4, 5 AND 6 (MITCHELL)
Defendants contend the trial judge erred in denying their request for bureau of investigation (b. of i.) and computer runoff sheets containing information about a state witness' criminal record and also erred in denying their motion for a one-week recess. They argue that the sheets and the recess were necessary to properly prepare to impeach the witness.
After commencement of trial but before the first witness was sworn, Jesse Lepree withdrew his former plea of not guilty and pled guilty to simple robbery. At this time, defendants requested production of the b. of i. sheet on Lepree and information as to the plea bargain agreement between the state and Lepree. The trial judge denied the request for the b. of i. sheet but ordered the state to make available to defendants the plea bargain agreement. Defendants also moved for a recess of one week to prepare for the possibility of Lepree's testimony. The trial judge denied the motion but ordered a short recess to allow defendants an opportunity to speak with Lepree. Later during trial, Lepree testified as a state witness. On cross-examination, he clearly admitted two previous convictions for aggravated burglary. Defendants again requested production of the b. of i. and computer runoff sheets on Lepree. The state informed the court that it did not have the b. of i. sheet and that the computer runoff sheet was "very inaccurate" and detailed "simply . . . a number of arrests." Upon this representation, the trial judge denied defendants' requests. Defendants also extensively cross-examined Lepree concerning his plea bargain with the state in relation to the instant case. A copy of the plea bargain agreement had been made available to defendants.
Defendants questioned Lepree in detail on cross-examination concerning his prior convictions, and Lepree clearly admitted two prior convictions for aggravated burglary in addition to his guilty plea to simple robbery in relation to the instant case. If Lepree's testimony could be impeached by reference to his prior criminal record, the *936 evidence produced would suffice to serve that purpose. State v. Jones, 345 So.2d 1161 (La.1977). In any event, we note that arrest and conviction records are public records and are available to the defense in accordance with La.R.S. 44:1, et seq.; defendants do not even allege the existence of any evidence of prior convictions not admitted by Lepree on cross-examination. Hence, there is no showing of any prejudice to the rights of defendants. Under the circumstances, we are unable to say that the trial judge erred in denying defendants' request for the b. of i. and computer runoff sheets.
Defendants' contention that the trial judge erred in refusing to grant a one-week recess is equally without merit. Defendants argue that the recess was necessary to prepare to impeach Lepree's testimony by questioning him concerning prior convictions and his plea bargain agreement in relation to the instant case.
The decision to grant or deny a recess is within the sound discretion of the trial judge and will not be overturned on appellate review absent a clear abuse of discretion. State v. Jenkins, 340 So.2d 157 (La.1976). The trial judge ordered a short recess to allow defendants to speak with Lepree. On cross-examination, defendants questioned Lepree extensively concerning his prior convictions and plea bargain agreement. Defendants have made no showing of how an additional week of preparation would have increased the effectiveness of their cross-examination of Lepree on these matters. Hence, the trial judge did not abuse his discretion in refusing to grant a one-week recess.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 3, 7, 8 AND 11 (ROBERTSON)
Defendant Robertson contends the trial judge erred in admitting in evidence testimony concerning three handguns (State Exhibits 2, 3 and 4) and in allowing their exhibition before the jury prior to completion of the proper foundation for their admission in evidence. He also assigns as error admission in evidence of three handguns (State Exhibits 1, 2 and 3) on the ground that no proper foundation was laid establishing their connection with the case.
During trial, Joseph C. Bruce, an employee of Pailet and Penedo, testified that during the robbery one of the robbers motioned to him with a pistol at which time he had a good opportunity to observe the weapon. The state then showed the witness a pistol (S-4) for the purpose of identification only. Robertson's objection to the exhibition of the weapon at this time was overruled by the trial judge. Thereupon, the witness identified the pistol as similar to the one used in the robbery. Later during trial, Jerome Kelley and Richard Dubea, also employees of Pailet and Penedo, both identified two pistols (S-1 and S-4) as similar to ones used in the robbery. Subsequently, Officer Steinkamp identified three pistols (S-1, S-2 and S-3) as having been seized at the residence of Mitchell's girlfriend. Robertson objected to this testimony and the exhibition of the weapons on the ground that no foundation had been laid establishing their connection with the case. The objections were overruled by the trial judge. Thereafter, Lepree identified each of the four handguns as one used in the robbery. Upon introduction of the weapons in evidence, Robertson objected on the ground that a proper foundation had not been laid for their admission.
The testimony of the employees of Pailet and Penedo and of Officer Steinkamp identifying the various handguns and the exhibition of the weapons was part of the state's foundation for introduction of the four weapons in evidence. At the time these witnesses were questioned about the handguns, the state made no effort to offer them in evidence. Hence, mention of the weapons and their exhibition before the jury were merely preliminary. The trial judge did not err in allowing their testimony and exhibition of the handguns because the court cannot control the state's order of *937 proof. La.Code Crim.P. art. 773; State v. Weathers, 320 So.2d 895 (La.1975); State v. Mitchell, 311 So.2d 888 (La.1975); State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971). The state subsequently completed its evidence establishing the proper foundation for admission in evidence of the four handguns with the testimony of Lepree that each of the weapons was one actually used in the armed robbery. Based upon the foregoing facts, we conclude that it was more probable than not that the four handguns were connected with the case. Hence, the trial judge did not err in admitting the weapons in evidence. State v. King, Nos. 60,732 and 60,733, 355 So.2d 1305 (La. 1978); State v. Williams, 341 So.2d 370 (La.1976); State v. Collins, 328 So.2d 674 (La.1976).
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 4, 5, 13 AND 14 (ROBERTSON)

ASSIGNMENTS OF ERROR NOS. 1 AND 2 (MITCHELL)
Defendants contend the trial judge erred in overruling a motion to suppress and objections to the admission of physical evidence. Robertson further assigns as error the admission of testimony concerning the seizure of physical evidence.
At the hearing on the motion to suppress, Richard Schmitt testified that a man came to his used car lot and offered to trade him a stone for a car. He stated that he took the stone to an acquaintance who owned a restaurant and that this man offered to get it appraised. Officer James Steinkamp testified that on March 14, 1975, about 11:00 a. m., he was ordered to go to Pailet and Penedo jewelers to investigate the recovery of a diamond previously stolen in an armed robbery. (The instant armed robbery allegedly occurred on March 8, 1975.) He stated that Mr. Pailet advised him that Anthony Mandino, a restaurant operator, sent a diamond to him for appraisal and that he recognized the diamond as one taken during the robbery. Officers Steinkamp and Ronald Brady both testified that they interviewed Mr. Mandino and were informed that he had gotten the diamond from Mr. Schmitt. They stated that Mr. Schmitt told them that a black male had asked to trade the diamond for a car. Mr. Schmitt gave a physical description of this man. The officers also learned that the man was to return to the used car lot at 4:00 p. m. The used car lot was placed under surveillance, with Officer Brady inside the office and Officer Steinkamp waiting in the police vehicle. Officer Brady testified that about 4:00 p. m. a car pulled into the lot and that Mr. Schmitt identified the black male who got out of the car as the same man who had given him the diamond. Officer Brady notified Officer Steinkamp that the subject was on the lot, and he was apprehended. Officer Steinkamp's testimony corroborated that of Officer Brady concerning Mr. Schmitt's identification of defendant Mitchell as the man who had given him the diamond. Mr. Schmitt, however, denied having so identified the man. Officer Steinkamp testified that he recovered two watches and a ring from Mitchell at the time of his arrest. The watches had jeweler tags on them, with numbers identifying them as stock of Pailet and Penedo, and price tags. Based upon this evidence and a statement given by Mitchell indicating that more jewelry could be found at his restaurant, a search warrant was obtained, leading to the seizure of further evidence at the restaurant. The trial record reveals that a subsequent search was made and evidence seized at the residence of the mother of Mitchell's girlfriend, pursuant to her consent.
Defendants' sole argument in support of these assignments of error is that the arrest of Mitchell was not based upon probable cause and was thus illegal, rendering the evidence seized incident to the arrest and pursuant to the search warrant based upon this information and information obtained thereafter inadmissible as "fruit of the poison tree." In order to determine the merit of these assignments, we must decide whether the arrest of Mitchell was based upon probable cause to believe that he had committed a crime.
*938 Article 213 of the Louisiana Code of Criminal Procedure provides in pertinent part:
A peace officer may, without a warrant, arrest a person when:
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer . . . .
Reasonable cause, which we have treated as consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Williams, 349 So.2d 286 (La.1977); State v. Robinson, 342 So.2d 183 (La.1977); State v. Marks, 337 So.2d 1177 (La.1976). Reasonable or probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Williams, supra; State v. Robinson, supra; State v. Marks, supra; State v. Sarrazin, 291 So.2d 393 (La.1974). Compliance with these standards is in the first instance a substantive determination to be made by the trial judge from the facts and circumstances of the case. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Williams, supra; State v. Robinson, supra; State v. Marks, supra; State v. Warren, 283 So.2d 740 (La.1973).
In the instant case, the police received information directly from Mr. Pailet by which they were able to trace the chain of possession of a recently stolen diamond through Mr. Mandino to Mr. Schmitt. The police learned that a black male had given Mr. Schmitt the diamond, attempting to trade it for a car, and was to return to the used car lot about 4:00 p. m. Although denied by Mr. Schmitt, Officer Brady testified that he identified a black male, Mitchell, who arrived at the used car lot about 4:00 p. m., as the person who had given him the diamond. The trial judge chose to accept the officer's testimony on this point, which, after reviewing the record, we feel he was justified in doing. These circumstances, coupled with the suspicious act of attempting to trade a stolen diamond for a car within one week of the armed robbery, convince us that ample probable cause existed prior to the arrest of Mitchell. Hence, we find no merit to defendants' contention that Mitchell's arrest was not based upon probable cause; therefore, the physical evidence seized incident to his arrest and as a result of the search warrant based upon this information and information obtained thereafter was not inadmissible as "fruit of the poison tree." The trial judge did not err in overruling the motion to suppress that evidence, the objections to its admission at trial, and the objections to the testimony concerning its seizure.
In brief, defendant Mitchell contends the trial judge erred in denying the motion to suppress the physical evidence seized at the residence of the mother of his girlfriend pursuant to her consent to the search. He argues that this consent was coerced and, hence, invalid.
No evidence was adduced at the motion to suppress concerning the consent to search; no objection was urged on the ground of invalid consent at the time the evidence was introduced at trial. It is well settled that a new basis for an objection cannot be raised for the first time on appeal. State v. Fowlkes, 352 So.2d 208 (La. 1977); State v. Williams, 343 So.2d 1026 (La.1977); State v. Marks, supra. In any event, the trial record indicates that valid consent to search the residence was given by the mother, who executed a consent form, and was acquiesced in by the girlfriend, who signed the form as a witness.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 6, 12 AND 18 (ROBERTSON)

ASSIGNMENTS OF ERROR NOS. 11 AND 12 (MITCHELL)
Defendants contend the trial judge erred in denying their motion for a mistrial and *939 in admitting in evidence a shotgun, testimony concerning its seizure, and a photograph depicting the shotgun and other items.
During trial, Officer Steinkamp testified that a shotgun, jewelry, and other items were seized at defendant Mitchell's restaurant pursuant to a search warrant. Defendants moved for a mistrial on the ground that no foundation had been laid connecting the shotgun with the case and, hence, mention of the shotgun was prejudicial to defendants. The trial judge denied the motion but admonished the jury to consider the shotgun only as an item seized at the restaurant. A photograph, State Exhibit 22, was shown to Officer Steinkamp, and he was asked if he recognized it. Defendants objected to "any questions in connection with State Exhibit S-22 because of the same weapon being part of that exhibit." The objection was overruled. Two police officers identified the photograph as depicting jewelry and weapons they had assisted in seizing at Mitchell's restaurant. Later during trial, Lepree testified that a shotgun wrapped in Christmas foil was used in the armed robbery. He stated that jewelry was taken during the robbery and hidden at Mitchell's restaurant. Upon introduction in evidence of the shotgun, defendants objected on the ground that the proper foundation had not been laid to connect the shotgun with the case. When the photograph of the jewelry and weapons, including the shotgun, was introduced in evidence, defendants objected on the grounds that the photograph depicted the inadmissible shotgun and that the proper foundation had not been laid for admission of the photograph in evidence.
Defendants' contentions that mention of the shotgun prior to completion of the proper foundation for its admission in evidence warranted a mistrial and that the shotgun, testimony concerning it, and the photograph depicting it were inadmissible are without merit.
Neither the state nor the defendant can be controlled by the court as to the order in which evidence shall be adduced; but, when the evidence requires a foundation for its admission, the foundation must be laid before the evidence is admissible. La.Code Crim.P. art. 773. To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. State v. King, Nos. 60,732 and 60,733, 355 So.2d 1305 (La.1978); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971). For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case. State v. King, supra; State v. Williams, 341 So.2d 370 (La.1976); State v. Collins, 328 So.2d 674 (La.1976). Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the jury. State v. King, supra; State v. Hayes, 306 So.2d 705 (La.1975); State v. Freeman, 306 So.2d 703 (La.1975); State v. Dotson, supra; State v. Wright, 254 La. 521, 225 So.2d 201 (1969).
The testimony of Officer Steinkamp concerning the shotgun seized at Mitchell's restaurant was part of the state's foundation for introduction of the shotgun in evidence. At the time that Officer Steinkamp was questioned about the shotgun, the state made no effort to offer it in evidence. Hence, the mention of the shotgun were merely preliminary. The trial judge properly denied defendants' motion for a mistrial because the court cannot control the state's order of proof. La.Code Crim.P. art. 773; State v. Weathers, 320 So.2d 895 (La. 1975); State v. Mitchell, 311 So.2d 888 (La. 1975); State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971).
The state subsequently completed the foundation for admission in evidence of the shotgun through the testimony of Lepree and two police officers. Lepree testified that a shotgun was used during the armed robbery and also that the stolen jewelry *940 was hidden at Mitchell's restaurant. The officers testified that the photograph depicted jewelry and weapons seized at the restaurant. The shotgun is among those items depicted. Based upon the foregoing facts, we conclude that it was more probable than not that the shotgun was connected with the case.
We also consider that the proper foundation was laid for introduction of the photograph in evidence. It is a well-settled rule that a photograph need not be identified by the person who took it to be admissible in evidence. State v. Cass, 356 So.2d 936 (La.1977); State v. Vincent, 338 So.2d 1376 (La.1976); State v. Freetime, 334 So.2d 207 (La.1976); State v. Forbes, 310 So.2d 569 (La.1975); State v. Browning, 290 So.2d 322 (La.1974). Generally, photographs are admissible in evidence when they are shown to have been accurately taken, to be a correct representation of the subject in controversy, and when they tend to shed light upon the matter before the court. State v. Cass, supra; State v. Freetime, supra; State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970). Sufficiency of identification of a photograph for purpose of admissibility thereof rests largely with the discretion of the trial judge. State v. Cass, supra; State v. Fox, 251 La. 464, 205 So.2d 42 (1967).
In the instant case, two police officers, who had assisted in the seizure of the evidence at Mitchell's restaurant, testified that the photograph depicted the evidence seized. These officers had personal knowledge of the items seized. Thus, the state laid a proper foundation for admission in evidence of the photograph.
For the first time on appeal, defendants suggest in brief that the shotgun constituted inadmissible evidence relating to another crime. It is well settled that a new basis for an objection cannot be raised for the first time on appeal. State v. Fowlkes, 352 So.2d 208 (La.1977); State v. Williams, 343 So.2d 1026 (La.1977); State v. Marks, 337 So.2d 1177 (La.1976). In any event, having previously concluded that the shotgun was properly admitted in evidence as being connected with the instant case, there is no merit to this contention.
Also for the first time on appeal, Mitchell contends that the shotgun was inadmissible in evidence because the state failed to mention it in answer to a motion for a bill of particulars requesting enumeration of the weapons allegedly used in the armed robbery. Once again, the well-settled rule is that a new basis for an objection cannot be raised for the first time on appeal. State v. Fowlkes, supra; State v. Williams, supra; State v. Marks, supra. In any event, we find no merit to Mitchell's contention. When there is a variance between the bill of particulars and the evidence offered in support thereof, the court may order the bill of particulars amended in respect to the variance and then admit the evidence. La.Code Crim.P. art. 488. If it is shown, on a motion of the defendant, that he has been prejudiced in his defense on the merits by the variance with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. La.Code Crim.P. art. 489. No amendment of the bill of particulars was ordered in the instant case. However, failure to do so does not constitute reversible error in the absence of prejudice to defendant. State v. Russell, 352 So.2d 1289 (La.1977); State v. Champagne, 251 La. 849, 206 So.2d 518 (1968). We find no such prejudice here.
In sum, for the reasons assigned, the trial judge did not err in denying defendants' motion for a mistrial and in admitting in evidence the shotgun, testimony concerning it, and the photograph depicting it. Therefore, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 9 (ROBERTSON)
Defendant Robertson contends the trial judge erred in curtailing his cross-examination of a state witness.
Bernard Sanders was charged with armed robbery in the same information with Robertson, Mitchell and Lepree. Prior *941 to trial, the state entered a nolle prosequi as to the charge against Sanders. Lepree (coparticipant in the crime) testified that Sanders was not one of the robbers. During trial, Lester L. Pailet testified as a state witness that he had identified Sanders at a pretrial lineup as one of the robbers. On cross-examination, he clearly admitted making a positive identification of Sanders as one of the perpetrators of the robbery. Upon being asked to describe Sanders, the trial judge ruled the question irrelevant at that time. Defense counsel stated that his inquiry was to "the weight of the ability of the witness . . . to describe and identify persons." He added, "He is attempting to identify persons in this case." The trial judge maintained his previous ruling. After further cross-examination of Mr. Pailet concerning his identification of Sanders, the trial judge granted defense counsel's request that Sanders be brought into the court room. Mr. Pailet admitted that he had previously identified this man (Sanders) as one of the robbers.
Robertson contends the trial judge's refusal to permit Mr. Pailet to give a description of Sanders prevented him from impeaching the witness by showing his inability to accurately describe persons. The apparent purpose of the inquiry was to show Mr. Pailet's inability to identify people by revealing the fact that he had positively identified Sanders as one of the robbers whereas the state had chosen not to prosecute him and Lepree testified that Sanders was not one of the robbers. The obvious implication of these facts would supposedly be that Mr. Pailet had identified one innocent man as a perpetrator of the robbery and, hence, his identification of Robertson could not be trusted. This implication was clearly presented to the jury. Therefore, Robertson accomplished his purpose. Under the circumstances, even assuming possible error in the ruling of the trial judge, the error was harmless. La. Code Crim.P. art. 921.
Assignment of Error No. 9 (Robertson) is without merit.

ASSIGNMENTS OF ERROR NOS. 10 AND 16 (ROBERTSON)

ASSIGNMENTS OF ERROR NOS. 8, 9 AND 10 (MITCHELL)
Defendants contend the trial judge erred in requiring Robertson to be fingerprinted in the presence of the jury. They argue that the procedure was prejudicial in that it was inflammatory and cumulative in nature. They also contend the trial judge erred in admitting fingerprint identification evidence. They argue that this evidence was not within the scope of the state's opening statement.
During trial, Officer Steinkamp identified an invoice as the one he found on the second floor of Pailet and Penedo ten days after the robbery. The invoice was dated March 7, 1975, the day before the robbery. Mr. Thomas R. Martin was qualified as an expert in the field of fingerprint identification. Defendants did not question his qualifications; in fact, they stipulated to his qualifications as an expert in said field. Mr. Martin identified a fingerprint card bearing Robertson's name as one he had obtained from the latent fingerprint file in Washington, D.C. He compared a fingerprint on the invoice to the corresponding print on the card and opined that the two prints were made by the same finger. The trial judge granted the state's request that Robertson submit to being fingerprinted in court. Defendants objected on the grounds that the procedure was unduly inflammatory and would be merely cumulative. The objection was overruled and Robertson submitted to the procedure. Mr. Martin compared the fingerprint taken in court to the print obtained from the invoice and opined that the two were made by the same finger. Subsequently, the various items used in the fingerprint comparisons were admitted in evidence over defendants' objection on the ground that they were not within the scope of the state's opening statement.
Identification of Robertson as one of the perpetrators of the robbery was a material issue in dispute; therefore, the fingerprint identification of Robertson was *942 highly probative to place him at Pailet and Penedo jewelers. Since the fingerprint on the card obtained from the latent print files in Washington was not current and not clearly identified as being that of Robertson, the in-court fingerprint procedure was necessary to obtain a current fingerprint which undeniably was Robertson's. Clearly, the probative value of the procedure outweighed any prejudicial effects. Hence, we find no merit to defendants' contention that the trial judge erred in requiring Robertson to be fingerprinted in the presence of the jury.
Defendants' contention that the fingerprint identification evidence was inadmissible as not being within the scope of the state's opening statement is equally without merit. We note first that the record reveals no objection to the testimony of the expert witness concerning fingerprint identification. In the absence of a contemporaneous objection, an alleged irregularity or error in the proceeding cannot be availed of after verdict. La.Code Crim.P. art. 841; State v. Williams, 343 So.2d 1026 (La.1977); State v. Finley, 341 So.2d 381 (La.1976); State v. Knight, 323 So.2d 765 (La.1975). In any event, we consider that the expert testimony and the various items used in the fingerprint comparisons were admissible. The state's evidence need not be detailed in the opening statement. The statement's primary function is to set forth in general terms the nature of the charge and of the evidence sufficiently to enable the jury to follow the proceedings and to inform the accused of what acts on his part the state intends to prove. La.Code Crim.P. arts. 766, 769; State v. Sneed, 316, So.2d 372 (La.1975). The trial judge did not err in admitting the fingerprint identification in evidence.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 15 (ROBERTSON)
Defendant Robertson contends the trial judge erred in admitting in evidence certain jewelry on the ground that the proper foundation had not been laid for its admission.
During trial, Lepree testified that jewelry was taken during the robbery and hidden at Mitchell's restaurant. Two police officers testified that a photograph depicted jewelry and other items seized at the restaurant. Mr. Pailet identified the same photograph as depicting some of his jewelry that he had recognized at police headquarters as having been stolen during the robbery. Later, Officer Steinkamp testified that the envelope marked State Exhibit 16A contained smaller envelopes bearing his initials and containing some of the jewelry he had seized at the restaurant. He then described the contents of the envelopes and reiterated that he had seized this jewelry at the restaurant. Upon introduction of these items in evidence, Robertson objected on the ground that the proper foundation had not been laid for their admission.
Based upon the foregoing facts, we conclude that it was more probable than not that the jewelry was connected with the case. Hence, the trial judge did not err in admitting the jewelry in evidence. State v. King, Nos. 60,732 and 60,733, 355 So.2d 1305 (La.1978); State v. Williams, 341 So.2d 370 (La.1976); State v. Collins, 328 So.2d 674 (La.1976).
Assignment of Error No. 15 (Robertson) is without merit.

ASSIGNMENT OF ERROR NO. 7 (MITCHELL)
Defendant Mitchell contends the trial judge erred in denying his pretrial motion requesting that he be furnished with a written copy of the state's intended opening statement. We find no merit to this contention.
Louisiana Code of Criminal Procedure article 766, which sets forth the requirements of the state's opening statement, does not require that it be submitted in written form. Moreover, the Official Revision Comment to articles 766 through 769 notes that several proposals were considered in preparation of the revision, including *943 "serving the defendant with a copy of the state's opening statement several days before trial . . . ." This proposal was not adopted. Hence, the trial judge did not err in denying Mitchell's pretrial motion requesting that he be furnished with a written copy of the state's intended opening statement.
Assignment of Error No. 7 (Mitchell) is without merit.

ASSIGNMENT OF ERROR NO. 13 (MITCHELL)
Defendant Mitchell contends the trial judge erred in allowing Mitchell himself, against the advice of trial counsel, to make the decision to withdraw a motion for a mistrial grounded on an allegation of jurors' inattention.
During trial, but outside the presence of the jury, the trial judge stated that he had observed the inattention of two jurors during the testimony of a witness. Mr. Panzeca, Mitchell's trial counsel, stated that Mitchell had also informed him of the situation; and Mr. Panzeca moved for a mistrial. Robertson's counsel informed the court that he had discussed the possibilities involved in the situation with his client and that Robertson did not wish a mistrial but wanted to proceed with the trial. The court asked Mr. Panzeca if he still persisted in his motion, and he informed the court that he was discussing the matter with Mitchell. After a short time, Mr. Panzeca stated:
Your Honor, my client has instructed me to move for a mistrial, Your Honor. And I do so move.
Your Honor, it becomes moot. My client has agreed to withdraw the motion. Withdraw it and proceed according to Your Honor's instructions.
The court then proceeded to question Mitchell himself:
BY THE COURT:
You understand, now, Mr. Mitchell, you are waiving your right to raise this issue in the future as a result of your withdrawal, motion for withdrawal; is that understood by you?
BY MR. ARTHUR MITCHELL:
Yes, Your Honor.
BY THE COURT:
You understand, Mr. Panzeca is withdrawing the motion with your instructions and with your consent?
BY MR. ARTHUR MITCHELL:
Yes, sir.
BY THE COURT:
All right. The motion is withdrawn.
Defendants' rights were reserved to complain of any future misconduct on the part of the jury. On this appeal, Mitchell is represented by different counsel and assigns as error the withdrawal of the motion for a mistrial by Mitchell against the advice of his trial counsel.
There is no merit to this contention. The record clearly indicates that the motion for a mistrial was withdrawn with the concurrence of both Mitchell and his trial counsel. There is no indication in the record that Mr. Panzeca did not concur in this decision.
Assignment of Error No. 13 (Mitchell) is without merit.

DECREE
For the reasons assigned, the convictions and sentences are affirmed.
NOTES
[1] Bernard Sanders and Jesse Lepree were also charged in the same information for having committed the same offense. Prior to trial, the state entered a nolle prosequi as to the charge against Sanders. During trial, Lepree withdrew his former plea of not guilty and pled guilty to simple robbery (La.R.S. 14:65) with the consent of the state.